UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff/Respondent,

v.                                            Criminal Case No. 17-20185

Gary Hill,                              Civil Case No. 19-12497

    Defendant/Petitioner.
_____/

**OPINION & ORDER
DENYING MOTION UNDER 28 U.S.C. § 2255**

Defendant/Petitioner Gary Hill ("Hill) pleaded guilty to possession with the intent to distribute cocaine and was sentenced to a term of ten years in prison. He did not file a direct appeal. Acting through new counsel, Hill filed the instant motion seeking to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255. Hill's motion asserts that he received ineffective assistance of counsel from his prior retained counsel, Jeffery Collins. Hill alleged that his former counsel was deficient in that he: 1) failed to investigate and file a motion to suppress Hill's confession, which if successful, could have supported a motion seeking to dismiss the Indictment; 2) provided inaccurate advice to him that induced him to plead guilty; and 3) failed to file a notice of appeal on his behalf. Hill later withdrew his claim that his counsel failed to file a notice of appeal on behalf. The motion has been fully briefed by the parties[1] and the matter is ripe for a decision by the Court. For the reasons set forth below the

---

[1]In addition, Counsel for Hill filed a Motion to Supplement (ECF No. 53) that does not assert any additional grounds but asks the Court to consider a declaration from Hill. This Court shall grant that motion and consider that declaration from Hill.

1

Court shall DENY Hill's motion and decline to issue a certificate of appealability.

## BACKGROUND

In March of 2016, the Federal Bureau of Investigations began investigating a narcotics trafficking network operating in the Detroit Metropolitan area. During the course of that investigation, Hill was identified as a suspect. (Govt.'s Sentencing Memo. at 1). Hill's associate was eventually caught with large quantities of cocaine and heroin. (*Id*. at 2). Hill was also under surveillance and he was seen meeting with co-coconspirators at Somerset Mall, in Lathrup Village, Michigan, and Toledo, Ohio. "Hill moved both money and drugs around to different locations – including the home of his then girlfriend, Monique Dunbar." (*Id.*.) Hill had access to Dunbar's residence and frequented it often. "As a result, a warrant was authorized for a search of her home." (*Id*.).

On January 30, 2017, officers executed a search warrant at the Southfield, Michigan residence of Dunbar. A quantity of cocaine and a large sum of cash was seized during that search.

On February 7, 2017, Hill was indicted in a sealed one-count Indictment in Criminal Case Number 3:17-CR-00055 in the United States District Court for the Northern District of Ohio (herein after the "Ohio Case"). On that date, Hill and two others (Leroy L. Hooker and Larry E. Stewart) were charged in the Ohio Case with one count of conspiracy to possess with intent to distribute heroin and cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846. That one-count Indictment charged that on or about December 2, 2016, in the Northern District of Ohio, the defendants conspired to possess with intent to deliver heroin and cocaine. That Indictment made no reference to a January 30, 2017 search and seizure or to any activity in

Michigan.

On February 9, 2017, Hill was arrested in Detroit, Michigan while driving his car. (Hill Decl. at ¶ 1). Hill states that on that date, the police executed a warrant for his arrest after his indictment in the Ohio Case. Hill states he was pulled over and told that he was being arrested because of the indictment in Ohio and was brought to a local police department. (*Id*. at ¶ 3). Hill was brought to the Southfield Police Department. (*See* ECF No. 58). Hill further states:

> I did not have counsel at the time of my arrest. When I arrived at the police station I was taken to a room where approximately a dozen agents and police officers were present. Most of the agents were federal agents and not members of the local police force. I was told that I had been indicted for my involvement in illegal drug activity and that it would be better for me if I was willing to answer questions and provide a statement. Agents asked me to waive my right to remain silent and have counsel present and asked that I speak with them about the case. I was provided a form stating that I agreed to waive my rights and asked to sign the form waiver and submit to an interview. I agreed to sign the waiver and then was interrogated by federal agents for a lengthy period of time. During the interrogation I confessed my involvement in the drug conspiracy, including the fact that the drugs found at Ms. Dunbar's resident in Southfield, Michigan belonged to me and that I intended to deliver the cocaine to another individual.

(*Id.* at ¶ 4).

While at the Southfield Police Department, Hill signed a "Federal Bureau of Investigation Advice of Rights" form. (ECF No. 58). That form states "YOUR RIGHTS" and then follows:

Before we ask you any questions, you must understand your rights.

> You have the right to remain silent.
>
> Anything you say can be used against you in court.
>
> You have the right to talk to a lawyer for advice before we ask you any questions.
>
> You have the right to have a lawyer with you during questioning.

3

> If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.
>
> If you decide to answer questions now without a lawyer present, you have the right to stop answering at any time.

(*Id*.). Hills signed this consent to the form, indicating that he was willing to answer questions without a lawyer present. (*Id.*). After signing that form, Hill spoke with the officers at the Southfield Police Station.

Hills states that he was "told that [he] had been indicted for [his] involvement in illegal drug activity and that it would be better for [him] if [he] was willing to answer questions and provide a statement." (Hill Decl. at ¶ 4).

It is undisputed that, during that interview, Hill "confessed that the drugs found at his girlfriend's residence in Southfield, Michigan belonged to him and that he intended to deliver the cocaine to another individual." (Def.'s Br. at 4). Hill's Declaration states that he also confessed "his involvement in the drug conspiracy." (*Id*.).

Hill asserts that during that interview, "I confessed my involvement in the drug conspiracy, including the fact that the drugs found at Ms. Dunbar's residence in Southfield, Michigan belonged to me and that I intended to deliver the cocaine to another individual." (Hill Decl. at ¶ 4).

On March 8, 2017, a Superceding Indictment was returned in the Ohio Case. (ECF No. 50-2 at PageID.353). The Superceding Indictment expanded the allegations as to the conspiracy alleged in Count I, adding Defendants, expanding the conspiracy to having taken place in Ohio and Michigan, and including numerous acts having been committed in furtherance of the conspiracy. That includes the allegation that on January 30, 2017, Hill possessed approximately

$86,100.00 in United States currency in a residence located in Southfield, Michigan. (Superceding Indictment at ¶ 165).

The Indictment in the Ohio Case was unsealed after Hill's arrest on February 9, 2017. (ECF No. 5 in Ohio Case). On February 17, 2017, attorney Jeffrey Collins entered an appearance as retained counsel for Hill in the Ohio Case. Hill was arraigned in the Ohio Case on February 22, 2017. During that case, Collins filed a motion seeking to suppress statements by Hill but the motion was denied by the district court.[2]

On March 29, 2017, Hill was indicted in a criminal case in this Court. In Criminal Case Number 17-20185, Hill, along with Co-Defendant Monique Dunbar, was charged in a one-count Indictment with Possession with the Intent to Distribute Cocaine, in violation of 21 U.S.C. § 841(a)(1). The Indictment charged that on or about January 30, 2017, Hill and Dunbar possessed with the intent to distribute "more than 500 grams of cocaine."

In this case, Hill was also represented by retained counsel, attorney Jeffrey Collins, who entered his appearance on April 18, 2017.

A notice of penalty enhancement, titled "21 U.S.C. § 851 Sentencing Enhancement Information" was filed on May 1, 2017, stating:

> Pursuant to 21 U.S.C. § 851, the United States of America states that the defendant, GARY HILL, has the following prior conviction in 1997 that the government will rely upon at sentencing:
> Distribution of controlled substances; Case Number 0647 1:91CR00742-001, in the United States District Court, Northern District of Ohio.

(ECF No. 22).

---

[2] Hill ultimately pleaded guilty to the conspiracy charge in the Ohio Case and was sentenced to a term of 188 months imprisonment, that ran *concurrent* to the sentence in this case.

Hill and Dunbar each filed a motion seeking to suppress the underlying search warrant that led to the charges in this case, challenging the validity of the underlying affidavit. This Court denied both motions in an Opinion and Order issued on November 27, 2017.

On December 21, 2017, the Government dismissed the Indictment as to Dunbar (ECF Nos. 37 & 38) but proceeded as to Hill.

On February 22, 2018, the Government filed a notice of penalty enhancement under 21 U.S.C. §§ 841(a)(1), 841(b), and 851, for a prior federal drug conviction. (ECF No. 40).

Pursuant to a Rule 11 Plea Agreement (ECF No. 44), on March 14, 2018, Hill pleaded guilty to Count One of the Indictment, which charged possession with intent to distribute cocaine, in violation of violation of 21 U.S.C. § 841(a)(1). The parties stipulated that the weight of the drugs seized was in excess of 500 grams and that Hill was previously convicted under Case Number 91-CR-00742 in 1997 in Federal Court for the Northern District of Ohio. The Rule 11 Agreement contained an agreed applicable guidelines grange of 41 to 51 months imprisonment. But the Rule 11 Agreement noted that Hill faced a mandatory minimum sentence of ten years, and a maximum sentence of life in prison. As a result, Hill's effective guideline range was ten years.

Under the Rule 11 Agreement, the Government agreed to recommend a sentence of ten years. In addition, the United States agreed to not object to a request by Hill that any sentence in the case of *United States v. Gary Hill*, Case No. 17-00055-1, then-pending in the Northern District of Ohio, run concurrent to the sentence imposed in this case. (*Id*. at ¶ 4).

The Rule 11 Agreement contained an appeal waiver that provided that "Defendant waives any right he may have to appeal his conviction on any grounds." But "[t]he waiver of

appeal does not affect the defendant's ability to bring a claim pursuant to 28 U.S.C. § 2255 in court." (*Id*. at ¶ 6).

At his plea hearing, Hill confirmed, under oath and on the record, that he had reviewed the Indictment with Collins, and that Collins had answered each and every question he had concerning it. Hill confirmed that he was aware of the charge and his sentencing exposure. Hill confirmed that he had carefully reviewed the Rule 11 Plea Agreement with his attorney, that his attorney had answered each and every question regarding it before Hill signed it. Hill confirmed that Collins had discussed his case and the evidence with him, that Collins had answered each and every question regarding Hill's case, and that Hill was satisfied with the representation that he had received from Collins. (*See* ECF No. 47). This Court found Hill competent to enter a free, knowing, and voluntary guilty plea, accepted that plea, and took the Rule 11 Agreement under advisement.

This Court later accepted the Rule 11 Agreement, sentenced Hill to a term of ten years imprisonment, and issued the Judgment in this case on August 28, 2018. Hill did not file a direct appeal in this case.

Acting through new retained counsel, on August 26, 2018, Hill filed a Motion to Vacate pursuant to 28 U.S.C. § 2255, asserting that his prior counsel, Collins, provided ineffective assistance to him. He claimed that his counsel provided ineffective assistance to him in three respects: 1) by failing to investigate and file a motion to suppress his confession that, if successful, could support a motion seeking to dismiss the Indictment; 2) by providing inaccurate advice to him that induced him to plead guilty; and 3) by not having filed a notice of appeal on his behalf.

Thereafter, Hill agreed to waive the attorney-client privilege, so that the Government could speak with Collins in order to respond to Hill's claims. The Government filed a brief opposing Hill's motion, along with an affidavit from Collins.

In an Order issued on April 15, 2020, this Court explained that it concludes that one of Hill's claims – his claim that his counsel failed to file a notice of appeal on this behalf – warranted an evidentiary hearing. (*See* ECF No. 61). This Court set an evidentiary hearing for July 22, 2020 at 9:30 a.m.

On June 23, 2020, however, Hill filed an unopposed motion advising the Court that Hill seeks to withdraw his claim that his right to effective assistance of counsel was violated "when he did not consent to counsel's failure to file a notice of appeal." (ECF No. 64). Hill further requested "that the evidentiary hearing scheduled for July 22, 2020 be canceled and that this Court issue a final order with respect to the remaining claims." (*Id*. at 2). This Court granted that motion and, as such, only two grounds for relief remain.

# ANALYSIS

Hill's Motion To Vacate is brought pursuant to 28 U.S.C. § 2255, which provides as follows:

> A prisoner in custody under a sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence imposed was in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside, or correct the sentence.

28 U.S.C. § 2255. To prevail on a § 2255 motion, "a petitioner must demonstrate the existence of an error of constitutional magnitude which has a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005). A movant can prevail on a § 2255 motion alleging non-constitutional error only by establishing a "fundamental defect which inherently results in a complete miscarriage of justice, or an error so egregious that it amounts to a violation of due process." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999).

Defendants seeking to set aside their sentences pursuant to 28 U.S.C. section 2255 have the burden of establishing their case by a preponderance of the evidence. *McQueen v. U.S.*, 58 Fed. App'x 73, 76 (6th Cir. 2003).

It is well established that when a defendant files a section 2255 motion, he or she must set forth facts establishing entitlement to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *Green*, 454 F.2d at 53; *O'Malley*, 285 F.2d at 735 (citations omitted).

9

Hill's Motion to Vacate claims that he received ineffective assistance of counsel in violation of his Sixth Amendment rights.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall . . . have the Assistance of Counsel for his defense." U.S. Const. amend. VI. "This does not simply guarantee the mere existence of legal counsel but provides 'the right to *effective* counsel – which imposes a baseline requirement of competence." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 148 (2006) (emphasis added). "The Supreme Court has extended this right to critical pre-trial proceedings, including plea negotiations." *Logan v. United States*, 910 F.3d 864, 868 (6th Cir. 2018) (citations omitted). "The failure of defense counsel to 'provide professional guidance to a defendant regarding his sentence exposure prior to a plea may constitute deficient assistance.'" *Smith v. United States*, 348 F.3d 545, 553 (6th Cir. 2003).

"But proving ineffective assistance of counsel 'is *never* an easy task.'" *Carter v. Parris*, 910 F.3d 835, 838 (6th Cir. 2018) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)). To show that he was denied his right to effective assistance, Hill must demonstrate two things: 1) that his counsel's performance was deficient; *and* 2) the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A party asserting an ineffective assistance of counsel claim must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690.

Hill asserts that his counsel provided ineffective assistance to him in two respects: 1) by failing to investigate and file a motion to suppress his confession that, if successful, could support a motion seeking to dismiss the Indictment; 2) by providing inaccurate advice to him that induced him to plead guilty.

**I. Failing To Investigate And File Motion**

10

As his first ground for relief, Hills faults his counsel for failing to investigate and move to dismiss the indictment in this case.

The only allegations as to the alleged deficiency of "failing to investigate," however, is that Collins failed to investigate all of the facts surrounding Hill's confession, otherwise Collins would have filed a motion to suppress the confession, which could have led to a dismissal of the case. (*See* Def.'s Br. at 13) (Alleging that a "cursory investigation into the facts leading to Petitioner's confession would have indicated that Petitioner's right to counsel under both the Fifth and Sixth Amendment had been violated when agents interrogated Petitioner two days after he was indicted for conduct comprising the instant offense. Therefore, Petitioner had a valid defense because his confession was inadmissible and the indictment had to be dismissed."). Thus, the actual claimed deficiency is Collins not having filed a motion to suppress Hill's confession, which if successful, could have supported a motion seeking to dismiss the case.

As this ineffective-assistance-of-counsel claim is based on a motion to suppress that the petitioner claims should have been filed, the analysis turns on the viability of that motion. *Carter v. Parris*, 910 F.3d at 839. Because Collins's failure to file a motion to suppress based on the violation of Hill's Fifth and Sixth Amendment rights is being challenged, Hill must show that claim "is meritorious and that there is a reasonable probability that the [outcome] would have been different absent the excludable evidence." *Williams v. United States*, 632 F. App'x 816, 821 (6th Cir. 2015) (quoting *Kimmelman v. Morrison,* 477 U.S. 365, 375 (1986)).

    **A.**    **The Motion To Suppress That Hill Claims Should Have Been Brought Lacks Merit.**

11

Here, Hill's new counsel argues that Collins could have successfully moved to suppress Hill's February 9, 2017 confession had he argued that Hill's statement was taken in violation of his Fifth and Sixth Amendment rights to counsel. In making this argument, Hill argues that his "Fifth and Sixth Amendment rights were violated when agents came to Petitioner to elicit incriminating statements *concerning the instant offense*. The conduct comprising the instant offense was part and parcel of the conspiracy charged in the Northern District of Ohio. Accordingly, Petitioner was under indictment for the instant offense at the time he was interrogated on February 9, 2017." (Def.'s Br. at 15-16) (emphasis added).

The Government contends this ground for relief should be rejected because Hill's statement was taken lawfully and his counsel was therefore not ineffective for failing to move for its suppression. The Court agrees.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const., amend. VI. A person's Sixth Amendment right to counsel "attaches only at or after the time that adversary judicial proceedings have been initiated against him," "whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *United States v. Woodley*, 713 F. App'x 449 (6th Cir. 2017) (quoting *Kirby v. Illinois*, 406 U.S. 682, 688-89 (1972)).

Once the adversary judicial process has been initiated, the Sixth Amendment guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings" and "[i]nterrogation by the State is such a stage." *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009).

Notably, as both parties here recognize, the Sixth Amendment right "is offense specific.

It cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced." *McNeil v. Wisconsin*, 501 U.S. 171 175 (1991); (Def.'s Br. at 17)(acknowledging that "the Sixth Amendment right to counsel is 'offense-specific.'").

Moreover, Supreme Court precedent places "beyond doubt that the Sixth Amendment right to counsel may be waived by a defendant, so long as relinquishment of the right is voluntary, knowing, and intelligent." *Montejo, supra* (citing *Patterson v. Illinois*, 487 U.S. 285, 292 (1988)). "The defendant may waive the right whether or not he is already represented by counsel; the decision to waive need not itself be counseled." *Id.* (citation omitted). And when a defendant is apprised of his *Miranda* rights "and agrees to waive those rights, that typically does the trick even though the *Miranda* rights purportedly have their source in the Fifth Amendment." *Id.* at 886; *see also Patterson, supra*, at 296 ("As a general matter . . . an accused who is admonished with the warnings prescribed by this Court in *Miranda* . . . has been sufficiently apprised of the nature of his Sixth Amendment rights, and of the consequences of abandoning those rights, so that his waiver on this basis will be considered a knowing and intelligent one.")

Here, Hill's claim that his Sixth Amendment rights were violated when the police spoke to him on February 9th without counsel present fails because: 1) at the time of his February 9th interview, Hill was not under indictment for the sole offense charged in this criminal case and, therefore, no Sixth Amendment right attached as to the offense charged in this case; and 2) even if Hill had been under indictment in this case, there would have been no constitutional violation because he waived his right to counsel after having been given *Miranda* warnings.

It is undisputed that Hill was arrested on February 9, 2017. As of that date, the original Indictment in the Ohio Case charged Hill with one count of conspiracy to possess with intent to

13

distribute heroin and cocaine – charging that on *December 2, 2016*, Hill and others conspired to possess with intent to distribute heroin and cocaine *in Ohio*. It made no reference to a January 30, 2017 search and seizure in Michigan or to any conduct or activity in Michigan. It was only later, on March 29, 2017, that Hill was charged in this case with a different offense – possession with intent to distribute cocaine. Accordingly, on February 9th, the day that Hill spoke with officers, no offense-specific right to counsel under the Sixth Amendment attached to the sole offense charged in this case.

In addition, assuming *arguendo* that such a right had attached, Hill waived it. There are no alleged facts that would indicate that Hill's wavier of rights was not knowing and voluntary. Before speaking with the officers, and while aware[3] of the Indictment in the Ohio Case[4], Hill waived his Sixth Amendment right to counsel by virtue of agreeing to speak with officers after having been fully apprised of his Fifth Amendment *Miranda* rights. (*See* Hill's own Affidavit, wherein Hill acknowledges "Agents asked me to waive my right to remain silent and have counsel present and asked that I speak with them about the case. I was provided a form stating that I agreed to waive my rights and asked to sign the form wavier and submit to an interview. I agreed to sign the waiver and then was interrogated" by officers; signed Advice of Rights form

---

[3]Hill's Declaration states that when he was first pulled over by police officers and February 9th, he was told that he was "being arrested because of the indictment in Ohio." (Hill Decl. at ¶ 3).

[4]Even if Hill had not been aware of the Indictment in the Ohio Case at the time he agreed to waive his *Miranda* rights and speak with the officers, that would not change the result. *See United States v. Woodley*, 713 F. App'x at 454-55 (rejecting argument that post-indictment interview violated defendant's Sixth Amendment rights, even though he was apprised of *Miranda* rights and waived them before speaking with officers, because defendant was unaware that he was under federal indictment at the time).

14

setting forth *Miranda* rights, ECF No. 58; Rule 11 Agreement at Section 1(C), acknowledging that '[f]ollowing his arrest, Hill was advised of his right to remain silent, waived same and agreed to be interviewed by law enforcement officers.").

Accordingly, Hill's statement was taken lawfully. Collins did not act unreasonably by failing to file a motion to suppress Hill's confession that lacked merit.

### B. In Addition, Hill Has Not Shown A Reasonable Probability That The Outcome Would Have Been Different Absent Hill's February 9th Confession.

Even if Hill could establish that Collins failed to file a meritorious motion to suppress his February 9th confession, in order to establish this ineffective-assistance of counsel claim he would also have to show a reasonable probability that the outcome would have been different if his February 9th confession had been suppressed in this case.

Hill's brief asserts that without his February 9th confession, the Indictment in this case would have to be dismissed. As the Government notes, however, the February 9th confession was not the only evidence that it had of the charged offense in this case. The Government explains:

> The government's case did not hinge on [Hill's] statements to police. The United States had (among other things) surveillance of Hill, intercepted calls, search warrant seizures of drugs and money, an extensive interview with a co-conspirator [Hill's girlfriend Monique Dunbar], and Hill's letter to [Dunbar's] father that the cocaine and money belonged to him. The kilogram of cocaine at issue in this case was found in Hill's coat pocket. Over $80,000 in cash was found as well.

(Govt.'s Br. at 9).

Accordingly, this ground for relief is without merit.

### II. Providing Inaccurate Advice That Induced A Guilty Plea

As his second ground for relief, Hill claims that Collins provided objectively

15

unreasonable advice when he advised him that he lacked a defense to the charge in this case and that he should accept the Rule 11 Plea Agreement that was offered by the Government.

As with every ineffective-assistance-of-counsel claim, in order to prevail on this claim Hill must show both deficient performance by Collins and that his deficient performance prejudiced his defense. *Strickland, supra*, at 687. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

"The decision to plead guilty – first, last, and always – rests with the defendant, not his lawyer. Although an attorney may provide an opinion on the strength of the government's case, the likelihood of a successful defense, and the wisdom of a chosen course of action, the ultimate decision of whether to go to trial must be made by the person who will bear the ultimate consequence of a conviction." *Smith v. United States*, 348 F.3d 545, 552 (6th Cir. 2003).

Nevertheless, a criminal defense attorney "has a clear obligation to fully inform [his] client of the available options." *Id*. Thus, a criminal defendant like Hill "has a right to expect at least that his attorney will review the charges with him by explaining the elements necessary for the government to secure a conviction, discuss the evidence as it bears on those elements, and explain the sentencing exposure the defendant will face as a consequence of exercising each of the options available." *Id.* at 553.

Here, however, Hill does not claim that Collins failed to review the charge with him, or the essential elements needed for a conviction, or that he failed to discuss with him the evidence as it relates to those elements. Hill also does not dispute that he was apprised that the charge in this case carried a maximum term of life imprisonment and a mandatory minimum sentence of

16

ten years imprisonment, and that he was also apprised and understood that he would receive a sentence of 10 years under the plea agreement offered by the Government.[5]

Rather, Hill claims that advice given by Collins was objectively unreasonable because: 1) the "indictment should have been dismissed as a result of government agents unconstitutional interrogation of" Hill; and 2) Hill "would have received the same 10 year sentence even if he was convicted at trial or pleaded guilty without a plea agreement." (Def.'s Br. at 6). Hill claims that, had he "been advised that a valid argument could be made to dismiss the charges *and* that he would receive absolutely no benefit from entering the plea agreement, he would have never entered the plea agreement." (*Id*. at 6-7) (emphasis added).

To show prejudice in the guilty plea context, a petitioner such a Hill must show that there is a reasonable probability that, "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also Pilla v. United States,* 668 F.3d 368, 372-73 (6th Cir. 2012); *Gant v. Winn*, 2018 WL 2382756 at *2 (6th Cir. 2018).

Here, as the Government's brief notes, Hill's brief and his Declaration *do not* assert that but for his counsel's alleged errors Hill would have *insisted on going to trial*.

Rather, Hill's Declaration states "[h]ad I been told that I had a potential defense and that I would receive the same 10 year sentence regardless of whether I entered the plea agreement, I would never have agreed to plead guilty." (Hill Decl. at ¶ 7). As such, Hill's Declaration reflects that had he known he had a viable defense, he would have filed a motion seeking to

---

[5]And even if he had, the record, including Hill's plea colloquy, reflects otherwise. (*See* ECF No. 47).

suppress his confession, rather than plead guilty under the agreement offered by the Government. Hill does not claim that he would have insisted on going to trial.

Moreover, even if he had so asserted in his Declaration, Hill cannot make the requisite showing of prejudice as to this claim. Hill "cannot make this showing merely by" asserting now that he "would have gone to trial then" if he "had gotten different advice" from Collins. *Pilla,* 668 F.3d at 373. Rather, this "test is objective, not subjective; and thus, 'to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.'" *Id.* at 373. The availability of a viable defense and a "prediction of the likely outcome at trial" are relevant to this inquiry. *Gant, supra* at *3 (quoting *Dando v. Yukins*, 461 F.3d 791, 798 & n1. (6th Cir. 2006)).

Hill had no viable defense to the charge in this case. In his motion, the only possible defense that Hill claims he could have pursued is a motion seeking to suppress his confession as having been taken in violation of his Fifth and Sixth Amendment rights to counsel. As explained above, Hill's argument lacks merit and his February 9th confession was taken lawfully.

In addition to lacking a viable defense to the charge, Hill faced overwhelming evidence of his guilt if he had proceeded to trial. That evidence included: police surveillance of Hill; intercepted telephone calls; the January 30, 2017 search and seizure of the drugs and cash from his girlfriend's residence, where the drugs were found in Hill's coat pocket; Hill's February 9th statement and confession to officers, admitting that he was involved in a drug conspiracy, that the drugs found in Dunbar's residence were his, and that he intended to deliver the cocaine to others; Hill's letter to Dunbar's father, admitting that the drugs and cash found during the January 30th search and seizure were his; and the statement and cooperation of Dunbar.

Accordingly, Hill had no realistic chance of being acquitted at trial.

Hill's motion asserts that he received "absolutely no benefit" from the plea agreement that his counsel negotiated with the Government and that he would have received the same ten-year sentence even if he was convicted at trial. (Def.'s Br. at 6). That is not true.

If he had been convicted of the charge at trial, Hill would face a minimum sentence of ten years but his maximum sentence would be *life imprisonment*. In addition, the sentence imposed in this case could be imposed to run *consecutively* with any sentence imposed in the Ohio Case.

The plea agreement that Collins negotiated with the Government, however, provided the following benefits to Hill: 1) it credited him for acceptance of responsibility; 2) it included a stipulated guideline range of ten years – the statutory minimum sentence for the charge; 3) it allowed Hill to withdraw his guilty plea if the sentence imposed by this Court exceeded ten years; 4) it included a recommendation by the Government for a ten-year sentence; 5) the Government agreed not to oppose a request by Hill for his sentence to run concurrently with any sentence imposed in the Ohio case; and 6) the Government agreed not to bring any further charges based on the conduct set forth in the factual basis section of the plea agreement.

Lacking any viable defense to the charge in this case, and facing overwhelming evidence of guilt, no rational defendant in Hill's position would have rejected the Government's proposed plea agreement and proceeded to trial. As such, Hill cannot make the requisite showing of prejudice and this ground for relief lacks merit.

## CONCLUSION & ORDER

For the reasons set forth above, IT IS ORDERED that Hill's § 2255 Motion is DENIED.

It is FURTHER ORDERED that the Court declines to issue a certificate of appealability

because this Court concludes that reasonable jurists would not find the Court's assessment of

Hill's claims debatable or wrong

    IT IS SO ORDERED.

                                                  s/Sean F. Cox  
                                                  Sean F. Cox  
                                                  United States District Judge

Dated:  July 6, 2020